**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEUTSCHE BANK TRUST COMPANY** | : | |
| **AMERICAS, AS TRUSTEE FOR THE** | : | |
| **REGISTERED HOLDERS OF WFRBS** | : | |
| **COMMERCIAL MORTGAGE TRUST** | : | |
| **2013-C18, COMMERCIAL MORTGAGE** | : | **CIVIL ACTION** |
| **PASS-THROUGH CERTIFICATES,** | : | **No. 24-5769** |
| **SERIES 2013-C18** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ROYERSFORD HOTEL GROUP LLC** | : | |

**McHUGH, J.**                                                                                **December 4, 2024**

**MEMORANDUM**

## I.    Background as Pled

This is a commercial mortgage foreclosure case.  In 2013, the original borrower, Latitude Hotels Group Royersford, L.P., obtained a $10 million loan from the original lender, The Royal Bank of Scotland PLC.  *See* Promissory Note, ECF 5-3.  The loan was secured by a mortgage on a hotel located in Valley Forge, Pennsylvania ("Hotel").  Leasehold Mortgage, ECF 5-4.

Subsequently, Royersford Hotel Group LLC ("Borrower") assumed the loan from the original borrower, Assumption Agreement, ECF 5-10, and the original lender assigned the loan to the registered holders of WFRBS Commercial Mortgage Trust 2013-C18, Commercial Mortgage Pass-Through Certificates, Series 2013-C18 ("Lender").  *See* ECF 5-8; ECF 5-9.  Plaintiff Deutsche Bank Trust Company Americas serves as trustee to the Lender.

Plaintiff brings this foreclosure action, contending that Defendant has been in default of the loan since December 1, 2023, the stated maturity date on the Loan Agreement.  *See* Loan Agreement at 13, ECF 5-6.  Pursuant to the Loan Agreement, "Borrower shall repay the entire

outstanding principal balance of the Note in full on the Maturity date, together with interest thereon to." *Id*. § 2.3.1. A failure to repay any "portion of the Debt" by the maturity date represents an event of default on the loan. *Id*. § 8.1(a)(i). Because Borrower has failed to pay the full amount due on or before the maturity date, Borrower is in default. *See* Notice of Default, ECF 5-12 (mailed notice to Borrower dated December 12, 2023, stating that Borrower is in default); Notice of Continuing Default and Demand for Payment, ECF 5-13 (mailed notice to Borrower dated July 15, 2024, stating that Borrower continues to be in default); Loan History, ECF 5-11 (showing an outstanding principal balance of over $9 million in October 2024).

In addition to being in default on the loan, Borrowers are experiencing significant issues operating the Hotel. At all relevant times, the Hotel has operated under the "flag" of Staybridge Suites, one of the brands of IHG Hotels & Resorts ("IHG"). Chan Decl. ¶ 21, ECF 5-2. As a franchise of IHG, the Hotel can access IHG's reservation system, rewards program, and marketing. *Id*. ¶ 22; Franchise Agreement, ECF 5-14. Borrower is currently in default with IHG for failure to pay franchise fees. On February 27, 2024, IHG sent Borrower a notice of default and gave Borrower until June 4, 2024 to cure the default. IHG Default Notice, ECF 5-15. In May, Borrower and IHG entered into a Forbearance Agreement with a payment plan. IHG Forbearance Agreement, ECF 5-16. But Borrower has failed to comply with the Forbearance Agreement. On August 15, 2024, IHG informed Borrower that they had breached and defaulted on this agreement and gave Borrower until December 3, 2024 to pay IHG or face the termination of the IHG license. Notice of Forbearance Default, ECF 5-17. There is no indication on the record that Borrower has paid IHG to remedy this default.

Plaintiff now seeks to appoint a receiver to operate the hotel, maintain the Staybridge Suites/IHG flag, and prevent the diminishment of the Hotel's value while this foreclosure action

proceeds. Mot. to Appoint Receiver, ECF 5. The docket reflects proper service of both the Complaint and this pending motion, and the time within which to respond has expired.

## II.    Standard of Review

Federal Rule of Civil Procedure 66 governs "an action in which the appointment of a receiver is sought," and accordingly governs this Motion. This Court's jurisdiction is based on diversity, and multiple Courts of Appeals have interpreted Federal Rule of Civil Procedure 66 as mandating that district courts sitting in diversity apply federal law with respect to the appointment of a receiver. *See, e.g., Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 842 (9th Cir. 2009); *Nat'l P'ship Inv. Corp. v. Nat'l Housing Dev. Corp.*, 153 F.3d 1289, 1291-92 (11th Cir. 1998); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993).

The Third Circuit has stated that the appointment of a receiver is an "extraordinary" remedy. *Maxwell v. Enterprise Wall Paper Manufacturing Company*, 131 F.2d 400, 403 (3d Cir. 1942). "It is not to be resorted to if milder measures will give the plaintiff, whether creditor or shareholder, adequate protection for his rights." *Id.* The Third Circuit has not yet endorsed a set of factors that district courts should consider in determining whether to appoint a receiver. Many other district courts within the Third Circuit's jurisdiction have turned to the factors identified by the late Judge Irenas in *Wells Fargo Bank, N.A. v. CCC Atlantic, LLC*, 905 F.Supp.2d 604 (D.N.J. 2012). *See, e.g., Wilmington Trust, Nat. Assoc. v. 1800 16th Street, LLC*, No. 19-cv-02601, ECF 30 (E.D. Pa., Feb. 11, 2020) (McHugh, J.) (adopting the *CCC Atlantic, LLC* factors). These factors include whether "the property is inadequate security for the loan" and whether "the mortgage contract contains a clause granting the mortgagee the right to a receiver." They also include "the continued default of the mortgagor; the probability that foreclosure will be delayed in the future; the unstable financial status of the mortgagor; [and] the misuse of project funds by the mortgagor."

*CCC Atlantic*, 905 F.Supp.2d at 614 (quoting *United States v. Berk & Berk*, 767 F.Supp. 593, 597 (D.N.J. 1991)).  Moreover, these factors may be applied in a less stringent manner if a loan agreement expressly allows for the lender to apply for a receiver in the event of a default.  *Id.* at 615 ("The importance of these contractual provisions cannot be underestimated because they set apart this commercial foreclosure case from the traditional scenario in which a receiver is sought at equity and no such contractual provisions exist.").  For present purposes, in the absence of any controlling authority from the Third Circuit, I will adopt these factors as well.

## III.    Discussion

Though the appointment of a receiver is an extraordinary remedy in most situations,[1] I am persuaded that the factors weigh towards receivership and that no milder measures will protect Plaintiff's rights.  Therefore, I will grant Plaintiff's motion.

The strongest factor weighing in support of a receiver is that the various loan documents contemplate such a remedy.  The Mortgage provides that, upon an event of default, the Lender may "apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor or of any person, firm or other entity liable for the payment of the Debt."  Leasehold Mortgage § 10(a)(vii), ECF 5-4.[2]  Therefore, Defendant

---

[1] Of note, courts have found that the appointment of a receiver is a less extraordinary remedy when, as here, the parties have already agreed to the appointment of a receiver as a remedy in the event of a default.  *See CCC Atlantic, LLC*, 905 F.Supp.2d at 615-16.

[2] In addition, the Mortgage also provides that after an Event of Default, Mortgagee may "enter into or upon the Mortgaged Property, either personally or by its agents, nominees, or attorneys and dispossess Mortgagor and its agents and employees therefrom, and thereupon Mortgagee may . . . use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with the Mortgaged Property and conduct the business thereat."  *Id.* § 10(a)(viii).

expressly consented, in the event of a default, to the specific remedy that Plaintiff seeks here.  *See MSCI 2006-IQ11 Logan Blvd. Ltd. P'ship v. Greater Lewistown Shopping Plaza, L.P.,* 2017 WL 485958 at *4 (M.D. Pa. Feb. 6, 2017) (appointing a receiver despite borrower's opposition where "[i]t is evident . . . that by the plain language of the mortgage contract, the parties have agreed to a receivership of the subject property").  And since the Mortgage expressly allows for the Lender to apply for a receiver, the other factors may be applied less stringently.  *See CCC Atlantic*, 905 F.Supp.2d at 615-16.

Additionally, from the record before me, it appears that the Borrower has an unstable financial status, continues to be in default, and has not used its funds to pay franchising fees or make necessary improvements.  Borrower failed to pay off the loan at its maturity date in December 2023, and has failed to pay off the loan since.  This continuance of default indicates Borrower's poor finances.  *See CCC Atlantic*, 905 F.Supp.2d at 616 ("[Borrower's] continued failure to cure the default[] demonstrates its doubtful financial standing.").  Furthermore, Borrower has failed to make its franchise payments to IHG or make the agreed-upon improvements necessary for the Hotel to maintain its status with Staybridge Suites/IHG.  *See* Franchise Agreement 33, ECF 5-14 (a Property Improvement Plan for the Hotel); Chan Decl. ¶ 34 ("the PIP plans have been approved. . . but no work has been done").  It is unclear where project funds are being directed, but it does not appear that these improvements are being made.  Consequently, these factors weigh in favor of appointing a receiver.

Furthermore, even if the foreclosure action proceeds rapidly and without undue delay, any foreclosure will not occur in time to prevent imminent harm to the Property.  Generally, "it is appropriate for a court to appoint a receiver when the party seeking a receiver demonstrates 'the imminent danger of property being lost, injured, diminished in value or squandered, and where

legal remedies are inadequate.'" *Cornerstone Realty Partners, Inc. v. Raboli*, 2017 WL 1243142 at *4 (D.N.J. Mar. 17, 2017) (citing *McDermott v. Russell*, 523 F.Supp. 347, 352 (E.D. Pa. 1981), *aff'd*, 722 F.2d 732 (3d Cir. 1983)). Such is the case here: Borrower is imminently at risk of losing its Staybridge Suites/IHG flag, which could prevent certain forms of reservations and reduce the value of the Hotel. *See* Notice of Forbearance Agreement Default, ECF 5-17.

Additionally, Lender lacks any security interest in the underlying real property, and its primary collateral for the loan is the revenue stream generated by operation of the Hotel. Chan Decl. ¶ 20. Therefore, maintenance of the Hotel business and its franchise agreement is critical to protect Lender's interest. This factor also weighs to the appointment of a receiver.

In sum, the relevant factors strongly support the appointment of a receiver in this case. Further, I am persuaded that this step is necessary to protect the Hotel's value and Plaintiff's interests. Because I am persuaded that Plaintiff's proposed receiver, VFPA Associates LLC, operating affiliate of GF Hotels & Resorts, has extensive experience managing distressed hospitality properties and is positioned to perform all receiver duties with expertise and professionalism, I approve its appointment as receiver. *See* GF Proposal, ECF 5-18.[3]

## IV.    Conclusion

For the reasons set forth above, Plaintiff's Motion for Appointment of Receiver is granted. An appropriate order follows.

 /s/ Gerald Austin McHugh
United States District Judge

---

[3] GF Hotels & Resorts has been assigned as receiver to over 800 hotels in 46 different states and is currently managing 15 hotels with IHG franchise agreements. GF Proposal, ECF 5-18.